[No. A073280. First Dist., Div. Four. Dec. 30, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTURO MORA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Parts III., IV. and V. are not certified for publication. (Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

James D. Rodseth, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Mark S. Howell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**REARDON, J.**—In this case of first impression, we hold that a biological father may lawfully be convicted of battering the mother of his child pursuant to section 273.5 of the Penal Code[1] even if their parental rights to that child had been terminated before commission of the offense.

A jury convicted appellant Arturo Mora of battering the mother of his child and found true an allegation that he had served a prior prison term. (See §§ 273.5, subd. (a), 667.5, subd. (b).) Sentenced to five years in state prison, Mora appeals, contending that (1) the termination of his and the mother's parental rights barred his lawful conviction for battering the mother of his child; (2) the trial court erred in refusing his request for a pinpoint instruction about reasonable doubt as to his paternity; and (3) it erred by failing to give a cautionary jury instruction about his alleged oral admissions. The People also challenge the credits Mora was awarded against his sentence. We affirm the conviction.

## I. FACTS

Socorro C. and appellant Arturo Mora met at Ukiah High School in the early 1980's. In May 1990, their daughter Carrie Ann was born.[2] When the child became the subject of juvenile dependency proceedings in Mendocino County, Socorro initially named another man as the father of the child. In 1991, Socorro told authorities that Mora might be Carrie Ann's biological father. In 1992, Mora petitioned that court as the biological father of Carrie Ann. In 1992, court-ordered blood tests indicated with 99.96 percent certainty that Mora was her natural father. In 1993, the Mendocino County

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The trial court took judicial notice of the superior court file and the unpublished copy of this court's decision on Mora's appeal from the order terminating his parental rights. (*In re Carrie Ann C.* (Aug. 10, 1993) A057782.) We take judicial notice of similar documents that Mora filed with this court. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a)(1).)

Juvenile Court terminated the parental rights of Socorro and Mora to Carrie Ann. Mora appealed from the order terminating his parental rights, arguing his paternity entitled him to certain due process rights. The termination order was affirmed in August 1993 and a final remittitur issued in December 1993. Carrie Ann was adopted.

In July 1993, Socorro bore Mora another child, Estella. In December 1994, the three of them were living together in a Ukiah trailer. By February 1995, Socorro was seven months pregnant.[3] By February 1995, Mora was living with Socorro and Estella only occasionally.

February 20, 1995, was Mora's birthday. That morning, he appeared at the trailer with gifts. Socorro did not want him to come in, but Mora forced his way into the trailer. For several hours, Mora came and went, arguing with her. He was drinking. Socorro went into the bedroom to stop the argument. She and Estella were lying on the bed. He followed Socorro into the bedroom and the argument continued. Mora hit Socorro and kicked her until she lost consciousness. When she came to, Mora was standing over her and Estella was crying. Socorro felt like her face was falling apart and she ran out of the trailer to call the police. At the hospital, doctors discovered that her jaw was fractured. A doctor later opined that this injury required a very hard blow.

Police went to the trailer to question Mora. He was holding Estella, who was still an infant. Police attempted to get him to hand over the child, so that they could arrest him. Mora refused to give up Estella, repeatedly telling officers, " 'This is my baby. You're not going to arrest me.' " After several minutes, one officer grabbed Mora's arm and another took the baby from him. Mora had been drinking, but he did not appear to be intoxicated to police. Shortly after his arrest, Socorro visited Mora in jail. She later told police that during a visit Mora admitted kicking her.

Mora was arrested and charged by information with battering Socorro, who was identified in the information as a cohabitant of the opposite sex. (§§ 273.5, 12022.7.) This aspect of the information was later amended to allege instead the battering of Socorro, who was identified as the mother of Mora's child. (§ 273.5) The battering was alleged to have occurred on February 20, 1995. The information also alleged an enhancement for infliction of great bodily injury and a 1991 state prison prior. (§ 667.5, subd. (b).) Mora waived his right to a jury trial on the prior conviction allegation.

At trial, Mora testified in his own defense. He told the jury that he believed that he might not be Estella's father. He did not believe that he was

---

[3] She gave birth to another child on April 6, 1995.

Carrie Ann's father, either. When shown a complaint that he filed to establish the paternity of Carrie Ann and Estella and to obtain sole custody of these minors, Mora testified that his signature was on this document but that he did not recall signing it or causing it to be filed.

Outside the presence of the jury, Mora argued that he was entitled to a pinpoint jury instruction on paternity. He reasoned that he could not lawfully be convicted of violating section 273.5 on the basis of his paternity of Carrie Ann, because his parental rights and those of Socorro had been terminated. However, the trial court refused his jury instruction and rejected his reasoning. During closing argument, the People argued that Socorro bore Mora two children, either of which satisfied the statutory requirements of section 273.5. Mora argued that neither was his child.

The jury convicted Mora of the charge of battering the mother of his child and found that he inflicted great bodily injury during the commission of the offense. (§§ 273.5, 12022.7.) The trial court found that the alleged state prison prior was true. (§ 667.5, subd. (b).) Mora was sentenced to five years in state prison—the upper term of four years for battering and one year for his state prison prior. The trial court chose not to impose sentence for the great bodily injury enhancement.

## II. Battering

On appeal, Mora first contends that the termination of his and Socorro's parental rights barred his lawful conviction of the battering of the mother of his child. He argues that Socorro is no longer within the class of persons that section 273.5 was intended to protect because their parental rights to Carrie Ann were terminated before the battering occurred. Thus, he contends that one theory that the prosecutor argued to the jury—that Mora was guilty of violating section 273.5 because he battered Socorro, the mother of his child Carrie Ann—was legally insufficient to support his conviction.[4]

At trial, Mora raised this issue when he requested that the trial court take judicial notice of court records of his termination of parental rights as to

---

[4]The prosecutor argued three possible theories by which Mora could be guilty of violating section 273.5—as the batterer of his cohabitant, as the batterer of Carrie Ann's mother and as the batterer of Estella's mother. As there was no special verdict in this matter to indicate the basis of the jury's finding of guilt, Mora's challenge to the legal adequacy of proof of one theory precludes us from assuming that the jury relied on one of the other theories when it reached its verdict. If the inadequacy of proof is purely factual, then reversal is not required if a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict rested on the inadequate ground. If the inadequacy of proof is legal—when the facts do not state a crime under the applicable statute—then reversal is required unless the record

Carrie Ann. He argued that he could not be convicted under the theory that he had battered Carrie Ann's mother, because Carrie Ann was no longer his child. He raised this argument when he proposed his own jury instructions and objected to the trial court's contrary instruction that the jury use the ordinary and popular meaning of the phrase "the mother of his child" when determining whether Carrie Ann and Estella were his daughters. The trial court refused to give the instruction that Mora sought and gave its own instead. Regardless of the termination of parental rights, the trial court ruled that Socorro as the mother of Carrie Ann fell within the protection of section 273.5. The prosecutor was permitted to argue this theory of the case to the jury.

In 1945, the Legislature enacted former section 273d, prohibiting spousal battering.[5] (See Stats. 1945, ch. 1312, § 1, p. 2462.) In 1977, section 273.5 was enacted to expand its predecessor statute to also include within its protection cohabiting, unmarried couples.[6] (*People* v. *Vega* (1995) 33 Cal.App.4th 706, 710 [39 Cal.Rptr.2d 479]; see Stats. 1977, ch. 912, § 3, p. 2786.) In 1988, the Legislature amended section 273.5, further extending application of the battering prohibition to one who batters the parent of his or her child.[7] (See Stats. 1988, ch. 576, § 1, pp. 2127-2128, eff. Aug. 26, 1988.) Specifically, this amendment to subdivision (a) of section 273.5 provides that "[a]ny person who willfully inflicts upon . . . *any person who is the mother or father of his or her child,* corporal injury resulting in a traumatic condition, is guilty of a felony . . . ." (Italics added.)

Mora's challenge requires us to interpret the meaning of the 1988 amendment to subdivision (a) of section 273.5. ■ Typically, courts interpret

shows that the verdict was actually based on a valid ground. (*People* v. *Guiton* (1993) 4 Cal.4th 1116, 1128-1129 [17 Cal.Rptr.2d 365, 847 P.2d 45]; see *People* v. *Lara* (1996) 44 Cal.App.4th 102, 110-111 [51 Cal.Rptr.2d 402].)

[5]Former section 273d stated that: "Any husband who wilfully inflicts upon his wife corporal injury resulting in a traumatic condition, but not constituting a felonious assault or attempted murder, . . . is nevertheless guilty of a felony . . . ." (Stats. 1945, ch. 1312, § 1, p. 2462.) This statute was amended to delete this language when the Legislature enacted section 273.5. (See Stats. 1977, ch. 912, §§ 2-3, p. 2786.)

[6]Section 273.5 originally made it a felony for a person to inflict "corporal injury resulting in a traumatic condition" on "his or her spouse" or "any person of the opposite sex with whom he or she is cohabiting . . . ." (See Stats. 1977, ch. 912, § 3, p. 2786.)

[7]By law, a man is considered to be the father of a woman's child if he is presumed to be the natural father pursuant to sections 7611 and 7612 of the Family Code. (§ 273.5, subd. (d).) Sections 7611 and 7612 of the Family Code create a rebuttable presumption of paternity under certain circumstances. (See Fam. Code, §§ 7611, 7612, subd. (a); *People* v. *Vega, supra,* 33 Cal.App.4th at p. 709.) However, section 273.5 does not require that a child's paternity be established by means of Family Code presumptions. (*People* v. *Vega, supra,* at pp. 709-711.) "[P]arentage can be established without resort to *any* presumption." (*Id.* at p. 711, italics added.)

statutory language according to the ordinary and popular sense of the words chosen by the Legislature. (*People* v. *Eddy* (1872) 43 Cal. 331, 336-337; see *In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].) When interpreting a statute, if the language is clear, we follow that plain meaning. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) We are also guided by the general principle that, when interpreting a criminal statute, we must determine the Legislature's purpose in enacting it. We read the statute in light of the evils prompting that enactment and the objective sought to be achieved by it. (*People* v. *Vega*, *supra*, 33 Cal.App.4th at pp. 709-710; see *In re Rojas*, *supra*, 23 Cal.3d at p. 155 [consider evident purpose for which statute was adopted]; *People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400].)

The overriding purpose of section 273.5 is to deter domestic violence. (*People* v. *Vega*, *supra*, 33 Cal.App.4th at p. 711.) Since enacting its predecessor statute in 1945, the Legislature has continually broadened the scope of this protection. The evolution of this statute reflects a developing awareness of the human factors that lead to domestic violence. The Legislature's enactments reflect a societal determination that domestic violence—once viewed as a purely private matter in which the state was reluctant to interfere—will no longer be tolerated.

As one court has put it, section 273.5 serves to protect partners in a special relationship from which society demands, and the victim may reasonably expect, stability and safety. In such relationships, the victim may be particularly vulnerable. By including "the mother or father of his or her child" within the ambit of section 273.5, the Legislature recognized that these persons are also involved in a special relationship deserving of protection. (*People* v. *Vega*, *supra*, 33 Cal.App.4th at p. 710.) Thus, the law which once protected married persons has evolved to also protect unmarried cohabitants and now, persons whose past intimate relations resulted in the birth of a child.

■ Mora argues that the termination of both his parental rights and those of Socorro to Carrie Ann eliminates one valid basis on which a section 273.5 case may be submitted to the jury. He reasons that because termination of parental rights totally severs the ties between a parent and a child, he is no longer her parent in any legal sense. Thus, he argues, he may not lawfully be punished for conduct undertaken by the father of a child. He contends that the special relationship in which he and Socorro were once involved was terminated when their parental rights to Carrie Ann were terminated.

Mora's legal argument is unpersuasive. The termination of parental rights alters the continuing legal relationship of a biological parent and child. It does not—indeed, it cannot—alter the historical fact of the biological father's paternity of that child. Termination of parental rights affects the legal status and continuing relationship of parent and child. It does not alter the child's DNA, nor negate the actual fact of paternity. As established by blood tests, Arturo Mora is the legally accepted biological father of Carrie Ann, even though his parental rights were subsequently terminated.

Mora's argument does not stand up when measured against the plain meaning of the words of section 273.5. As applied in this case, the statute prohibits a man from battering "the mother . . . of his . . . child . . . ." (See § 273.5, subd. (a).) Mora's interpretation of the statute is strained. The statutory language does *not* require a continuing parent-child relationship in order for its prohibition to apply. The ordinary meaning of this language does not require the child's presence during the battering, nor does it require that there be a continuing relationship between the mother and father of the child. It requires nothing more than the historical fact of paternity to justify punishing a man for battering the mother of his child. This reading of the statute is consistent with the general purpose of this law to deter domestic violence and the specific purpose of the 1988 amendment to protect persons whose past intimate relationship resulted in the birth of a child.

Applying the ordinary meaning of the language of section 273.5, this provision applies to a man who batters the mother of his child even after parental rights to that child have been terminated. (See *People* v. *Vega*, *supra*, 33 Cal.App.4th at p. 711 [Family Code case].) This conclusion is consistent with the policy reasons behind the enactment and amendment of section 273.5. As Socorro falls within the class of persons protected by section 273.5, the prosecutor properly argued that Mora could be convicted of violating that provision if the jury concluded that he battered Carrie Ann's mother and the jury could lawfully have based its verdict of guilt on that theory.

III.-V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1349.

## VI. Conclusion

The judgment is affirmed.

Poché, Acting P. J., and Hanlon, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 2, 1997.