[No. E019418. Fourth Dist., Div. Two. Mar. 10, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
BRANSON S. WARD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B, C, and D.

COUNSEL

Diane Nichols, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McKINSTER, Acting P. J.—Penal Code section 273.5[1] provides that any person who willfully inflicts corporal injury resulting in a traumatic condition upon "any person who is the mother or father of his or her child" is guilty of a felony. Does that statute apply to a man who has inflicted the proscribed injury upon a woman who is pregnant with his unborn child? We hold that it does not.

### FACTUAL AND PROCEDURAL BACKGROUND

Thea Airrington lived in an apartment in Riverside with her grandmother. The defendant, Airrington's boyfriend, moved in with her in November of 1995. The following month, they conceived a child. Suspecting that the defendant was being unfaithful to her, Airrington broke off their relationship in February of 1996 and moved his belongings out of the apartment.

On March 12, 1996, when Airrington was three to three and one-half months pregnant, the defendant went to the apartment to talk to her. An argument ensued which quickly degenerated into a physical altercation, during which the defendant grabbed her arms, pushed her down, grabbed her by the hair and slammed her head into the closet door, slapped her, and squeezed her neck. He left after Airrington's grandmother called the police. As a result, Airrington suffered red marks on her neck, pains in her back, neck, and stomach, bruises, and a lump on the back of her head.

In a three-count information, the defendant was charged with inflicting corporal injury in violation of section 273.5; with committing an assault on Airrington by means of force likely to produce great bodily injury, in

---

[1] Unless specified otherwise, all references to sections are to the Penal Code.

violation of section 245, subdivision (a)(1); and using force and violence upon the person of Airrington's grandmother, in violation of section 242. The information also alleges that the defendant had suffered a prior conviction of a serious and violent felony.

Prior to trial, the defendant moved to set aside the information pursuant to section 995 on the ground, inter alia, that a fetus is not a child. That motion was denied. At the conclusion of the prosecution's case at trial, the defendant moved for a judgment of acquittal on the same ground. (§ 1118.1.) That motion was also denied.

The jury found the defendant guilty of all three offenses as charged. Thereafter, the defendant admitted the allegation of a prior conviction. As the principal term, the trial court selected the second count, regarding assault by means of force likely to result in great bodily injury. (§ 245, subd. (a)(1).) The court imposed the middle term of three years, which was doubled to six years as the result of the defendant's prior "strike." (§ 667, subd. (e)(1).) The sentence on count 1, for the violation of section 273.5, was also set at the midterm and also doubled, but stayed pursuant to section 654. On count 3, the battery charge, the defendant was sentenced to six months, to be served concurrently with the other charges.

## CONTENTIONS

 The defendant contends that section 273.5 does not apply, that the trial court committed prejudicial error by admitting evidence of a prior uncharged assault and by failing to instruct the jury concerning the weight to be given to expert testimony, and that the use of CALJIC No. 2.90 deprived him of due process. We find merit only in his first contention.

## DISCUSSION

A. *Penal Code Section 273.5 Does Not Apply to Prospective Parents of Unborn Children.*

At one time, section 273.5, subdivision (a), applied only to the abuse of spouses and cohabitants. (Stats. 1987, ch. 415, § 2, p. 1575.) However, the Legislature amended the statute in 1988 by adding a third class of protected persons: "Any person who willfully inflicts upon his or her spouse, or any person who willfully inflicts upon any person of the opposite sex with whom he or she is cohabiting, or any person who willfully inflicts upon any person

who is the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony . . . ." (Stats. 1988, ch. 576, § 1, p. 2127.) Here, the case was argued and the jury was instructed solely in terms of the third alternative. Therefore, the issue is whether a woman carrying a fetus is a "mother" of a "child," as those words are used in the statute.

Our primary task in interpreting a statute is to determine the Legislature's intent so as to effectuate the purpose of the law. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 218 [246 Cal.Rptr. 733, 753 P.2d 689].) Because the statutory language itself is the best indicator of that intent, we start with an examination of the words of the statute. (*Adoption of Kelsey S., supra,* p. 826.) If the Legislature has expressly defined a term, we must apply that definition. (*Ibid.*)

Section 273.5 does define "mother": "For the purposes of this section, a person shall be considered the father or mother of another person's child if the alleged male parent is presumed the natural father under Sections 7611 and 7612 of the Family Code." (§ 273.5, subd. (d).) But the birth of a child is an essential prerequisite of each of the five presumptions stated in Family Code section 7611, and section 7612 only deals with rebutting those presumptions. Under those Family Code provisions, therefore, a man cannot be the presumed father of a fetus. By incorporating those provisions, the definition of "mother" in subdivision (d) of section 273.5 excludes pregnant women. Accordingly, the enhanced penalties prescribed by section 273.5 cannot apply to battery of a pregnant woman, even though the fetus she is carrying was conceived through sexual intercourse with the batterer.

We reach the same result by analyzing the meaning of "child." In the absence of a statutory definition, words should be given their usual and ordinary meanings. (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 376 [20 Cal.Rptr.2d 330, 853 P.2d 496]; *Fontana Unified School Dist.* v. *Burman, supra,* 45 Cal.3d at p. 218.) In this case, however, resorting to the common meaning of the word does not indicate the Legislature's intent, because "child" has no fixed, single meaning. Depending on the context, it can refer to a fetus, a baby, a young person between infancy and youth, a minor, or a descendant of any age. (See, e.g., Webster's New Internat. Dict. (3d ed. 1964) p. 388.) For that reason, this court has previously recognized that, "[a]s respects the question whether it was meant to refer to an unborn child, the statutory use of the word 'child' is at best ambiguous." (*Reyes* v. *Superior Court* (1977) 75 Cal.App.3d 214, 217 [141 Cal.Rptr. 912].)

While there is no statutory definition of "child," the Legislature has defined "minor" to mean "an individual who is under 18 years of age. The

period of minority is calculated from the first minute of the day on which the individual is born to the same minute of the corresponding day completing the period of minority." (Fam. Code, § 6500.) A fetus, therefore, is not a "minor." In determining the meaning of "child" as used in section 273d, which proscribes the willful infliction "upon a child [of] any cruel or inhuman corporal punishment or injury resulting in a traumatic condition," "child" and "minor" have been held to be synonymous. (*People* v. *Thomas* (1976) 65 Cal.App.3d 854, 858 [135 Cal.Rptr. 644].) Therefore, a fetus is not a "child."

We reached that same conclusion over 20 years ago in *Reyes* v. *Superior Court*, *supra*, 75 Cal.App.3d 214. There, a pregnant heroin addict had been warned that use of heroin during her pregnancy would endanger her fetus. Nevertheless, the woman continued to use heroin, with the result that she gave birth to twin boys who were addicted to heroin and who suffered withdrawal. She was convicted of violating 273a, former subdivision (1) (now, subd. (a)), which punishes willful conduct which causes physical pain or mental suffering to a child or which endangers a child's person or health. (75 Cal.App.3d at p. 216.) On appeal, we held "that the word 'child' as used in Penal Code section 273a, subdivision (1) was not intended to refer to an unborn child and that petitioner's prenatal conduct does not constitute felonious child endangering within contemplation of the statute." (*Ibid.*)

That exclusion of fetuses is consistent with the general rule regarding the scope of "child" in California law. " '[T]here are major and decisive areas where the embryo and fetus are not treated as equivalent to the born child.' Indeed, such equivalence is the exception rather than the rule." (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 577 [139 Cal.Rptr. 97, 565 P.2d 122], quoting *People* v. *Belous* (1969) 71 Cal.2d 954, 968 [80 Cal.Rptr. 354, 458 P.2d 194].) "[I]n the limited instances in which the Legislature has extended the protection of the criminal law to the unborn child, it has specially identified the object of its concern." (*Justus*, p. 578.) For instance, when proscribing the willful and unexcused failure to provide a child with clothing, food, shelter, and medical care, section 270 specifically provides that "[a] child conceived but not yet born is to be deemed an existing person insofar as this section is concerned." Without that language, the statute would not apply to neglect of an unborn child. (*Justus*, p. 578; *People* v. *Yates* (1931) 114 Cal.App.Supp. 782, 785 [298 P. 961].)

In its 1988 amendment to section 273.5, the Legislature referred to a "child" without adding any language to suggest that, contrary to the general rule, that term should be interpreted to include a fetus. In the absence of such

qualifying language, the term "impliedly but plainly excludes unborn children." (*Reyes* v. *Superior Court, supra*, 75 Cal.App.3d at p. 219.)

Quoting *People* v. *Mora* (1996) 51 Cal.App.4th 1349, 1355 [59 Cal.Rptr.2d 801], for the proposition that "[t]he overriding purpose of section 273.5 is to deter domestic violence," the People argue that an interpretation excluding "fetus" from the definition of "child" would be contrary to that legislative purpose. They are mistaken. " 'Domestic violence' means abuse committed against an adult or a fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." (§ 13700, subd. (b).) That statutory definition encompasses violence between individuals within a broad range of relationships. Had the Legislature intended section 273.5 to punish or deter all domestic violence, it could have simply referred to or copied the broad definition in section 13700. Instead, the Legislature chose to restrict additional punishment to violence occurring in a much narrower range of relationships. Thus, while the purpose of section 273.5 is to deter violence within particular relationships, it is clearly not designed to deter domestic violence in all the relationships in which it may occur. The relationship here is within section 13700's definition of domestic violence, but it is not one of the relationships specified in section 273.5.

Moreover, the legislative history of the 1988 amendments to section 273.5, by which the reference to the parents of a child were added, does not indicate that one of the purposes of the amendment was to discourage violence in the relationship between a pregnant woman and the estranged boyfriend who impregnated her.[2] To the contrary, the reason for the amendment was to extend the scope of the statute to those former couples " 'who have a child in common' " because " '[c]ustody, visitation, and decisions regarding the raising of children are the frequent sources of violent incidents between separated parents.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 4348 (1987-1988 Reg. Sess.), quoting the proponent of the bill, the Los Angeles City Attorney.) Custody, visitation, and child-raising are not issues which arise regarding a fetus.

The People also argue that it is anomalous to impose additional punishment for violence inflicted on the mother of a newborn baby but not for

---

[2]At our suggestion, both parties provided us with a variety of documents bearing on the legislative history of those amendments and requested that we take judicial notice of them. Those requests are granted except to the extent that they pertain to enrolled bill reports, letters to and from legislators, and other materials which are irrelevant to a determination of the Legislature's intent. (*McDowell* v. *Watson* (1997) 59 Cal.App.4th 1155, 1161-1162, fn. 3 [69 Cal.Rptr.2d 692].)

violence against a woman in the ninth month of her pregnancy. We disagree. The Legislature appears to have distinguished currently existing relationships (i.e., those between spouses, cohabitants, or parents of an existing child) from former or potential relationships (those between former spouses, former cohabitants, or expectant parents).

In effect, the People argue that there is no good reason for the Legislature to have excluded a pregnant woman bearing a fetus conceived by her batterer from whatever additional protection section 273.5 provides over other forms of battery. They may be correct, and the Legislature may wish to revisit the issue. However, it is not within our purview to express an opinion on such a purely legislative question. Uncertainty as to the reason for the distinction that the Legislature drew is not the same as uncertainty as to whether a distinction was drawn at all. Our role is only to determine whether a distinction exists, not to judge the wisdom of that distinction.

Even if we were to express an opinion that section 273.5 should be changed in some fashion, we would nevertheless be bound by the language of the statute as it exists today. ▮ By virtue of the separation of powers prescribed by the California Constitution, courts are not empowered to rewrite statutes. (See *Kopp* v. *Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.).) We would be engaging in judicial activism were we to "ignore the language employed by the Legislature merely because of a subjective evaluation that a differently worded statute would more effectively achieve the statutory goal." (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1071, fn. 20 [275 Cal.Rptr. 594].)

▮ In summary, the 1988 amendments to section 273.5 protect those "persons whose past intimate relations resulted in the birth of a child." (*People* v. *Mora, supra,* 51 Cal.App.4th at p. 1355.) A pregnant woman is not a "mother" and a fetus is not a "child" as those terms are used in that section. Accordingly, the section had no application to the defendant. The judgment on count 1 must be reversed.

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

That portion of the judgment convicting the defendant of violating section 273.5 in count 1 of the information is reversed. With that exception, the

*See footnote, *ante,* page 122.

judgment is affirmed. The trial court shall prepare and promulgate a corrected abstract of judgment.

Ward, J., and Gaut, J., concurred.