Filed 6/15/16

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E063931 |
| v. | (Super.Ct.No. FSB07901) |
| MARC ANTHONY ENDSLEY, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lorenzo R. Balderrama, Judge.  Reversed with directions.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

One of the ways a defendant who has been found not guilty by reason of insanity and committed to the state hospital may be released from commitment is by applying for restoration of sanity under Penal Code section 1026.2.[1] (*People v. Tilbury* (1991) 54 Cal.3d 56, 60 (*Tilbury*).) Release under section 1026.2 is a two-step process: conditional release to an outpatient treatment program for a trial period and, if successful, unconditional release into the community. (*Tilbury*, *supra*, at p. 60.) This case involves the first step.

In May 2015, defendant and appellant Marc Anthony Endsley, who is currently committed to Patton State Hospital (Patton), petitioned for conditional release to an outpatient program pursuant to section 1026.2. The trial court summarily denied his petition without stating its reasons for doing so.

On appeal, Endsley cites *People v. Soiu* (2003) 106 Cal.App.4th 1191 (*Soiu*) and argues section 1026.2 entitles him to a hearing on his petition. The People acknowledge a defendant is entitled to a hearing on a petition for conditional release, but contend Endsley's petition was "deficient on its face" pursuant to section 1026.2, subdivision (*l*) because it "failed to include the requisite recommendation by the state hospital director."[2] Endsley responds that section 1026.2, subdivision (*l*) requires the court, not the

---

[1] Undesignated statutory references are to the Penal Code.

[2] Section 1026.2, subdivision (*l*) states in relevant part: "If the application for the release is not made by the medical director of the state hospital . . . no action on the application shall be taken by the court without first obtaining the written recommendation of the medical director. . . ."

defendant, to obtain the medical director's recommendation in advance of the hearing. We agree with Endsley. Once a defendant initiates a petition for conditional release, section 1026.2, subdivision (*l*) requires the court to obtain a recommendation regarding the appropriateness of conditional release from the person in charge of the defendant's treatment.

We hold Endsley is entitled to a hearing on his petition for conditional release. Accordingly, we reverse the trial court's order denying the petition and direct the court to request a recommendation from Patton's medical director in advance of the hearing.

I

FACTUAL AND PROCEDURAL BACKGROUND

In 1995, 24-year-old Endsley shot his father five times with a pistol at point-blank range. A jury convicted him of first degree murder (§ 187, subd. (a)) and found true the allegation that he used a firearm when committing the crime (§ 12022.5, subd. (a)). However, the jury also found him not guilty by reason of insanity, and in May 1997, the superior court committed him to Patton pursuant to section 1026. The court found Endsley's maximum sentence, had he not been acquitted by reason of insanity, would have been 10 years plus life without the possibility of parole.

Fifteen years later, in February 2012, Endsley petitioned for conditional release from commitment. The trial court ordered Patton to prepare a report in advance of the hearing. After holding a hearing, the court granted the petition and placed Endsley on outpatient status in San Bernardino County's conditional release program (CONREP).

3

On January 7, 2013, the trial court revoked Endsley's outpatient status based on reports that he was not processing his anger issues with his group home staff. Endsley was transferred back to Patton and recommitted.

Patton's periodic progress reports since recommitment reflect Endsley was making steady progress on his anger and aggression issues. In an October 2014 report, Endsley's evaluator, Dr. Yakush, opined Endsley was "ready for placement in the Conditional Release Program. It is hopeful . . . [he] can discharge from the hospital in the relatively near future." The report also reflected that Endsley's treatment team had formally referred him to CONREP and he was waiting to be interviewed by the CONREP evaluator.

A March 2015 report informed the court that Endsley was scheduled for an interview with CONREP on March 17, 2015. Dr. Yakush reported Endsley was demonstrating "more insight and control over his thoughts than in the past." Dr. Yakush continued to believe Endsley was ready for CONREP.

In May 2015, Endsley filed in propria persona a petition for conditional release under section 1026.2. In the petition and attached declaration, he stated he had been confined since December 2012 and had not had a hearing to determine his suitability for conditional release in the previous 12 months. He claimed his sanity had been restored such that he would not pose a danger to himself or others if placed in outpatient treatment. He requested a hearing on his petition, appointment of counsel, and an independent psychiatric evaluation.

4

On May 27, 2015, the trial court denied the petition without a hearing. The minute order does not contain the court's reason for denial. Endsley timely appealed.

II

DISCUSSION

A.      *Restoration of Sanity Under Section 1026.2*

A defendant who has been acquitted by reason of insanity and committed to a state hospital can obtain release upon a finding that his or her sanity has been restored. (§ 1026.2.) Section 1026.2 sets forth the procedures for obtaining release.

"The first step in the release process requires the defendant, who has filed a release application, to demonstrate at a *hearing* that he or she will not 'be a danger to the health and safety of others, due to mental defect, disease, or disorder, while under supervision and treatment in the community.' (§ 1026.2, subdivision (e).) If the court finds such at the hearing, the defendant is then placed in 'an appropriate forensic conditional release program for one year.' (§ 1026.2, subdivision (e).) This is commonly called the outpatient placement hearing." (*Soiu*, *supra*, 106 Cal.App.4th at p. 1196.)

"The second step in the release process, often referred to as the restoration of sanity trial, normally occurs one year after the defendant has been placed in an outpatient program. Typically after one year, the court holds a *trial* to determine whether the defendant's sanity has been restored. Section 1026.2, subdivision (e), defines restoration of sanity as follows, '[T]he applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder.' Unlike during the first step in the

5

proceedings, the restoration of sanity trial requires the defendant to demonstrate that he or she is no longer a danger to the health and safety of others under all circumstances. During the first step of the release process, all the defendant must demonstrate is that she or he will not be a danger while 'under supervision and treatment in the community.' (§ 1026.2, subd. (e); citations.)" (*Soiu*, *supra*, 106 Cal.App.4th at p. 1196.)

This case involves step one only, the petition for conditional release.

B.     *The Petition for Conditional Release*

Either the defendant or the person in charge of the facility in which he is confined may file an application for release. (§ 1026.2, subd. (a).) Because a defendant seeking release through restoration of sanity must successfully receive treatment in an outpatient program before release, the "application" takes the form of a petition for conditional release to an outpatient program. Section 1026.2, subdivision (e) provides that, upon receipt of such a petition, "the court shall hold a hearing" to determine whether the defendant would be a danger to others while on outpatient status. Section 1026.2, subdivision (a) requires the court to provide at least 15 days' notice of the outpatient hearing to certain parties, including the person in charge of the facility in which the defendant is confined.[3]

---

[3]     Specifically, the court must give notice of the hearing date to "the prosecuting attorney, the community program director or a designee, and the medical director or person in charge of the facility providing treatment to the committed person." (§ 1026.2, subd. (a).)

"Pending the hearing," the person in charge of the defendant's treatment must prepare a summary of the defendant's treatment programs and forward it to the community program director and the court. (§ 1026.2, subd. (b).) Also pending the hearing, the community program director must identify for the court a facility "within a reasonable distance from the court in which the person may be detained pending the hearing." (*Ibid.*)

During the hearing, the defendant has the burden of proving he is not dangerous by a preponderance of the evidence. (§1026.2, subd. (k).) Section 1026.2, subdivision (*l*) the provision at issue in this case, prohibits the court from taking any "action" on an application for release "without first obtaining" the written recommendation of the person in charge of the defendant's treatment.

Section 1026.2 contains two eligibility requirements for petitioning for conditional release: (1) the defendant must have been confined or placed on outpatient status for a minimum of 180 days from the date of the commitment order and (2) one year must have elapsed from any previous denial of the defendant's petition for conditional release or application for restoration of sanity. (§1026.2, subds. (d), (j).) Put differently, once a defendant has been confined or on outpatient status for 180 days, he may petition for release on an annual basis. Endsley's petition met both procedural requirements.

C.    *Section 1026.2 Requires the Court to Hold a Hearing on a Petition for Conditional Release*

The parties agree that *Soiu* is instructive here. In *Soiu*, the defendant filed a petition for conditional release and also requested appointment of "an independent

7

psychologist to assist him in establishing his eligibility for the conditional release program." (*Soiu*, *supra*, 106 Cal.App.4th at p. 1193.) The trial court summarily denied the petition and appointment request. (*Ibid.*) On appeal, the defendant argued that section 1026.2 entitled him to a hearing on his petition. The appellate court interpreted the statutory language of section 1026.2 and agreed. The court concluded that, "based on the express language utilized by the Legislature," a trial court could not deny a defendant's petition for conditional release "without holding a hearing at which he would be present." (*Soiu*, *supra*, at p. 1198.)

The court noted the legislative history of section 1026.2 also supported its conclusion, explaining: "The mandatory hearing requirement was inserted in section 1026.2 in 1984. (Stats. 1984, ch. 1488, § 3, p. 5200.) Legislative committee reports in both houses of the Legislature referred to the requirement that a hearing be held. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Apr. 5, 1984, p. 13 ['This bill would make the hearing mandatory']; Assem. Com. on Criminal Law and Public Safety, Rep. on Sen. Bill No. 1984 (1983-1984 Reg. Sess.) as amended Apr. 24, 1984, p. 2 ['Under current law, no hearing is authorized before a court may order transfer of an NGI from or to a state hospital. This bill authorizes the court to hold such a hearing to determine whether to order the transfer'].)" (*Soiu*, *supra*, 106 Cal.App.4th at p. 1198.)

Based on its holding that outpatient hearings are mandatory under section 1026.2, the *Soiu* court reversed the trial court's denial of the defendant's petition, directed the

8

trial court to consider the defendant's request for appointment of an independent psychologist, and directed the trial court to hold the outpatient hearing in accordance with the procedures specified in *In re Reyes* (1984) 161 Cal.App.3d 655 (*Reyes*) with the exception of the right to a jury. (*Soiu*, *supra*, 106 Cal.App.4th at p. 1198.) The procedural safeguards discussed in *Reyes* are the right to appointed counsel and an "opportunity to confront and cross-examine adverse witnesses." (*Reyes*, *supra*, at p. 658.) In the more recent case of *Tilbury*, *supra*, 54 Cal.3d 56, the California Supreme Court described a defendant's procedural rights at an outpatient hearing as "the substantial procedural safeguards associated with trials, including among other things, the right to counsel, to a detached and neutral judicial officer, to present evidence, and to cross-examine adverse witnesses." (*Id.* at p. 69.)

The parties do not disagree on the holding of *Soiu* or on the basic proposition that a defendant petitioning for conditional release is entitled to an outpatient hearing. Rather, they disagree on the application of section 1026.2, subdivision (*l*), a provision prohibiting the court from taking any action on an application for release "without first obtaining" the written recommendation of the person in charge of the defendant's treatment. The People argue Endsley was required to request and obtain the recommendation from Patton's medical director and attach the recommendation to his petition. They further argue the court was authorized to summarily deny Endsley's petition for failure to attach the recommendation. In other words, under the People's reading of section 1026.2,

9

subdivision (*l*), it was Endsley's duty to "obtain" the recommendation as a prerequisite to filing a petition for conditional release.

      D.      *Meaning and Application of Section 1026.2, Subdivision (l)*

This case requires us to determine the meaning of a statutory provision that has not yet been interpreted by a California court. No published decisions have discussed the meaning of section 1026.2, subdivision (*l*) or involved its application. "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) " 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1163.)

Section 1026.2, subdivision (*l*) states in its entirety: "If the application for the release is not made by the medical director of the state hospital or other treatment facility to which the person is committed or by the community program director where the person is on outpatient status under Title 15 (commencing with Section 1600), *no action on the application shall be taken by the court without first obtaining the written recommendation of the medical director of the state hospital* or other treatment facility or of the community program director where the person is on outpatient status under Title 15 (commencing with Section 1600)." (Italics added.) This provision states only that

10

"the court" must "obtain[]" the recommendation, not that the court must also *request* the recommendation. Nevertheless, a common sense interpretation of this provision leads us to conclude the court's duty to request the recommendation is implicit in the court's explicit duty to obtain the recommendation.

The People's interpretation of the provision would make a *defendant's* duty to request the recommendation implicit in the *court's* duty to obtain. We think such a reading conflicts with the plain language of the provision. If the Legislature intended to place the duty to request on the defendant, it would have made that intention clear by using a different grammatical construction. For example, it could have explicitly stated that the defendant must request or obtain the recommendation, or it could have drafted the relevant portion of the provision along the following lines, "no action shall be taken by the court on *an application that does not contain the written recommendation of the medical director* of the state hospital or other treatment facility . . . ." Instead, the Legislature chose to prohibit "the court" from taking any action on an application for release "without first obtaining" the recommendation.

Our conclusion that the court must request and obtain the recommendation is supported by other subdivisions in sections 1026 and 1026.2 that similarly require or authorize the court to communicate with and request information from the medical professionals in charge of a defendant's treatment. Section 1026, subdivision (f) requires the medical director to submit progress reports "in writing to the court" at six-month intervals and it requires "the court" to "transmit copies of these reports to the prosecutor

11

and defense counsel." Section 1026.2, subdivision (a) requires the court to give the person in charge of the defendant's treatment at least "15 judicial" days' notice of an upcoming outpatient hearing. Section 1026.2, subdivision (b) requires the person in charge of the facility in which the defendant is confined to prepare a summary of the defendant's treatment programs in advance of the hearing and to "forward the summary . . . *to the court*." (Italics added.) Nowhere in section 1026 or 1026.2 is a defendant required or authorized to obtain information from the medical professionals in charge of his treatment. Rather, in each instance the statutes require direct interaction between the court and the medical professionals in charge of a defendant's treatment.

At oral argument, the People suggested we look to Welfare and Institutions Code section 6608 for guidance in interpreting Penal Code section 1026.2 because that provision sets forth an analogous conditional release procedure for sexually violent predators. We have reviewed Welfare and Institutions Code section 6608 and find it supports our conclusion that the court, not the defendant, must obtain the medical recommendation.

Like Penal Code section 1026.2, Welfare and Institutions Code section 6608 states: "If the petition for conditional release is made without the consent of the director of the treatment facility, *no action shall be taken* on the petition *by the court* without first *obtaining* the written recommendation of the director of the treatment facility." (Welf. & Inst. Code, § 6608, subd. (e), italics added.) The portion of Welfare and Institutions Code section 6608 we find particularly instructive is subdivision (f), which prohibits a

12

court from holding a hearing on a petition for conditional release "until the community program director designated by the State Department of State Hospitals submits a report *to the court* that makes a recommendation as to the appropriateness of placing the person in a state-operated forensic conditional release program." (Welf. & Inst. Code, § 6608, subd. (f), italics added.) By requiring in subdivision (f) that the community program director submit the recommendation to the court, the Legislature clarified the meaning of "obtain[]" in subdivision (e). Specifically, the Legislature clarified that the word "obtain" means to obtain the recommendation directly from the community program director, as opposed to obtaining it from the defendant. Reading into the word "obtain" a requirement that the defendant must procure the recommendation from the person in charge of his treatment and submit it with his petition directly conflicts with the requirement in Welfare and Institutions Code section 6608, subdivision (f) that the person in charge of treatment submit the recommendation *directly to the court*.

Putting aside this instructive language in the Welfare and Institutions Code and assuming we did find Penal Code section 1026.2, subdivision (*l*)'s requirement that "the court" obtain the recommendation ambiguous, the legislative history of the subdivision supports our conclusion. In a 1982 letter to California's Governor, Senator Newton Russell, the author of the bill that added section 1026.2, subdivision (*l*) to the Penal Code, described the provision as "add[ing] to Penal Code section 1026.2 a requirement that *the court* must obtain *from the medical director* of the state hospital, or other facility to which the defendant has been committed, that person's opinion on the restoration of

13

sanity issue before the court can take any other action." (Sen. Russell, sponsor of Sen. Bill No. 858 (1981-1982 Reg. Sess.), letter to Governor Edmund G. Brown, Jr., Sept. 1, 1982, italics added.) The People cite this letter in their brief, but only the portion in which Senator Russell advocates for the provision out of concern that "courts unconditionally releas[ed] defendants under Penal Code section 1026.2 without first obtaining the state hospital's opinion on such action." (*Ibid.*) We find that the portion of the letter not cited by the People establishes that the provision's author intended to place the duty to obtain the recommendation from the person in charge of a defendant's treatment on the court, not on the defendant.

Furthermore, the record in this case indicates that the trial court did not interpret section 1026.2 to require a petitioning defendant to obtain input from the person in charge of treatment as a prerequisite to an outpatient hearing. A minute order dated February 17, 2012, reflects that when Endsley petitioned for conditional release in 2012, the court "ORDER[ED] PATTON STATE HOSPITAL TO PREPARE A REPORT PURSUANT TO PC1026.2 **URGENTLY**." This indicates the court was aware of its duty to obtain input from Patton's medical director in advance of a hearing on the 2012 petition. It is unclear why the court did not take the same step in response to the 2015 petition.

Finally, our interpretation of section 1026.2, subdivision (*l*) seems to us the more logical and practical reading of the provision. The Legislature indicated the importance of the outpatient hearing by mandating its availability on an annual basis. (§ 1026.2,

14

subds. (e), (j).)  Likewise, California courts have long recognized the importance of annual hearings for defendants seeking release through restoration of sanity.  (See, e.g., *Reyes*, *supra*, 161 Cal.App.3d at p. 658 [" ' "For government to dispose of a person's significant interests without offering him a chance to be heard is to risk treating him as a nonperson, an object, rather than a respected, participating citizen" ' "]; *Tilbury*, *supra*, 54 Cal.3d at pp. 79-80 (dis. opn. of Mosk, J.) [the outpatient program is "the sine qua non to freedom—the key to the door"].)  Defendants are entitled to an outpatient hearing even if those providing their treatment do not recommend conditional release.  (*Reyes*, *supra*, p. 658 ["An individual facing the bleak prospect of incarceration in a maximum security mental hospital is clearly entitled to something more than a committing court's ex parte consideration of reports written by doctors under the employ of the state"]; see also *Soiu*, *supra*, 106 Cal.App.4th at pp. 1193, 1198 [defendant entitled to hearing even though his treatment team and the medical director did not think he was ready for outpatient status].)  For it is during the outpatient hearing when a defendant can present evidence in support of his suitability for conditional release and cross-examine those who believe he would pose a danger to others while under supervision in the community.  (*Reyes*, *supra*, at p. 658 ["If the right to an annual restoration of sanity hearing under Penal Code section 1026.2 is to represent something more than a hollow promise, it is imperative that the inmate be granted 'an opportunity to confront and cross-examine adverse witnesses' . . . [i]n granting this right, we ensure that the court is forced to make a critical inquiry into the evidence presented by the state"].)

The People have provided no reasoning to support their interpretation of section 1026.2, subdivision (*l*). They simply assert the medical director's recommendation is vital information for the court to consider with a defendant's petition for conditional release and thus, without it, a court can summarily deny a petition. This argument does not address which party has the burden to request the recommendation under the statute.

In our view, the practical effect of the People's interpretation is significant delay in the annual application process. If, for example, the medical director of the state hospital where the defendant is committed refused to prepare a recommendation at the defendant's request, the defendant's recourse would be to file a writ of mandamus with the trial court. The end result of a successful writ would be a court order directing the medical director to prepare a written recommendation. Interpreting section 1026.2, subdivision (*l*) to require the court to request the recommendation in the first instance avoids this type of needless delay.

Given the importance of the outpatient hearing, we think conditioning its availability on a defendant's ability to obtain a written recommendation from the very institution with which he may disagree about his readiness for conditional release imposes too substantial a burden on the defendant. We do not believe the Legislature intended to create such a burden with the enactment of section 1026.2, subdivision (*l*). On the other hand, the burden on the court to request the recommendation is minimal as the court is already required to obtain semi-annual progress reports from the medical director and to ensure counsel receives the reports. (§ 1026, subd. (f).)

16

Because the record is silent as to the reason the trial court denied Endsley's petition, we do not know whether the trial court actually interpreted section 1026.2, subdivision (*l*) in the way the People suggest. In the more than 30 years since the provision was enacted, there has been no indication that any court has applied such an interpretation or that there has been any controversy over which party has the duty to request the recommendation. It may be the trial court had a completely different reason for denying Endsley's request; however, our review on appeal is limited to consideration of the matters contained in the record before us. (*People v. Pearson* (1969) 70 Cal.2d 218, 221, fn. 1; *People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.)

In this case, the record indicates Endsley was making progress towards conditional release. By the time of the two most recent progress reports from Patton, Endsley's evaluator, Dr. Yakush, believed he was "ready" for conditional release and outpatient treatment. However, as stated, such positive assessment is not necessary to entitle Endsley to an outpatient hearing. (*Soiu*, *supra*, 106 Cal.App.4th at pp. 1193, 1198.) Endsley is entitled to a hearing because the plain meaning of section 1026.2 entitles him to one. (§ 1026.2, subd. (e); *Soiu*, *supra*, at p. 1198.) At his hearing, Endsley can cross-examine those people, if any, who believe he is not ready for conditional release and can present his own evidence that he will not be a danger to others during outpatient treatment.

We therefore conclude Endsley is currently entitled to a hearing on his petition for conditional release. Once the remittitur issues, the trial court should order Patton to

prepare a report which includes the medical director's recommendation as to Endsley's readiness for conditional release. The trial court should also consider Endsley's request for appointment of a medical professional to assist in the outpatient placement hearing. (See *Soiu*, *supra*, 106 Cal.App.4th at p. 1201.)

## III

## DISPOSITION

The order summarily denying the petition without a hearing is reversed. The cause is remanded to the superior court to hold a hearing consistent with this opinion.

CERTIFIED FOR PUBLICATION


<u>SLOUGH</u>
J.

We concur:


<u>MILLER</u>
Acting P. J.


<u>CODRINGTON</u>
J.