Filed 10/23/20  P. v. Smith CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B300420 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA437361) |
| v. | |
| SHICOREY LEE SMITH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Jenny M. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Colleen M. Tiedemann and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Defendant Shicorey L. Smith of second degree robbery and carrying a loaded firearm that was not registered to him. The trial court sentenced Smith to an aggregate prison term of 12 years 8 months, which included a 10-year enhancement for his use of a firearm during the robbery. Smith appealed the judgment, which we conditionally reversed because the trial court erred in failing to disclose to Smith a personnel complaint against one of the investigating officers. We remanded the matter to the trial court to provide Smith with the opportunity to show prejudice arising from the error, and allow the trial court to decide whether to strike the firearm enhancement.

Upon remand, the trial court denied Smith's motion for a new trial based on evidence derived from the personnel complaint, declined to strike the firearm enhancement, and reinstated the original judgment.

Smith appealed. Smith claims that the disclosure of the personnel complaint led to the discovery of evidence that entitled him to a new trial. Specifically, Smith asserts the detective who interviewed him had previously utilized coercive interrogation techniques against a suspect in another case. According to Smith, if he had been allowed to present this evidence at trial, he could have persuaded the jury that he falsely confessed to committing the robbery. Second, Smith challenges the trial court's refusal to strike the firearm enhancement.

Both of Smith's claims of error fail. First, Smith does not establish that he was prejudiced by the exclusion of the new evidence. Given that an audio recording and transcript of Smith's interview with the detective were introduced at trial, the jury could readily assess the voluntariness of Smith's confession

without the newly discovered evidence.  Smith may not obtain relief on his second claim because he fails to show that the trial court abused its discretion in refusing to strike the firearm enhancement where Smith not only brandished a firearm in the course of the robbery, but also carried an unregistered and loaded firearm the very day following the robbery.  Finding no error, we affirm.

## PROCEDURAL BACKGROUND

We summarize only those facts that are relevant to this appeal.

An information charged Smith with one count of second degree robbery, as defined by Penal Code[1] section 212.5, subdivision (c); and one count of carrying a loaded firearm not registered to Smith, in violation of section 25850, subdivision (a). (*People v. Smith* (Jan. 31, 2019, B281860) [nonpub. opn.] (*Smith I*).)[2]  The information alleged that Smith had personally used a firearm during the commission of the robbery for the purposes of section 12022.53, subdivision (b).[3]  (*Smith I, supra*, B281860.)

---

[1] Undesignated statutory citations are to the Penal Code.

[2] Portions of the Procedural Background are derived from our opinion issued in connection with Smith's prior appeal in *Smith I*.  We have granted Smith's request for judicial notice of the appellate record from *Smith I*.

[3] Section 12022.53, subdivision (b) provides in pertinent part:  "Notwithstanding any other provision of law, any person who, in the commission of a [robbery], personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years.  The firearm need not be operable or loaded for this enhancement to apply."  (See

3

A jury convicted Smith of all counts and found the firearm enhancement to be true.  (See *Smith I, supra*, B281860.)

At Smith's sentencing hearing, the trial court remarked that the low base term on the second degree robbery conviction was appropriate because the "factors in mitigation outweigh the factors in aggravation."  In particular, the court stated that it did not "know that there are any factors in aggravation," given that "[t]here was certainly no professionalism in this situation," the court did not "think the victim was particularly vulnerable," and "there is no cruelty, viciousness, or callousness."  The court also apparently found that Smith was not a "danger to society."  The court noted the following mitigating factors:  Smith had no prior criminal history, and "[h]e did acknowledge his involvement at a relatively early stage in the proceedings."  Conversely, the court found that even if Smith's "actions were motivated by a desire to provide resources" to his family, that fact would not "be a factor in mitigation."  Smith was thereafter sentenced to an aggregate prison term of 12 years 8 months, which was comprised of the low term of 2 years for the second degree robbery conviction and a 10-year enhancement imposed pursuant to section 12022.53, subdivision (b), along with a consecutive 8-month term for carrying a loaded firearm that was not registered to him (i.e., one third of the mid-term for that offense).

Smith appealed the judgment.  (*Smith I, supra*, B281860.) We conditionally reversed the judgment and remanded the matter to the trial court for further proceedings.  (*Id.*)  We directed the trial court to order the disclosure of a personnel

---

§ 12022.53, subd. (b); see also § 12022.53, subd. (a)(4) ["This section applies to the following felonies:  [¶] . . . [¶] Section 211 (robbery)."].)

4

complaint concerning Detective Gerald Harden, a document that the lower court had reviewed in connection with a motion that Smith had filed pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.[4]  (See *Smith I*, *supra*, B281860.)  We further directed the trial court to afford Smith an opportunity to demonstrate that this undisclosed evidence entitled him to a new trial, and determine whether to strike the firearm enhancement pursuant to an amendment to the Penal Code that took effect after Smith's sentencing hearing.  (*Id.*)

On remand, Smith filed a motion for a new trial based on evidence derived from the personnel complaint against Harden. Attached to the new trial motion was a report prepared by an investigator.  According to the report, Wendell Carter told the investigator that Carter filed a personnel complaint against Detective Harden in 2014.[5]  Carter stated that he was taken to a police station for questioning after an unknown person picked up a firearm that had been dropped by a police officer.  Carter claimed that during his interview with Detective Harden at the station, Harden "threatened to search [Carter's] house and send him to jail," which Carter interpreted "as threats because he was innocent."  Further, although Carter did not "have a specific recollection of Detective Harden threatening him with bodily

---

[4]  A *Pitchess* motion is a means by which "[a] criminal defendant, on a showing of good cause, [may obtain] discovery of information in the confidential personnel records of a peace officer when that information is relevant to defend against a criminal charge."  (See *People v. Gaines* (2009) 46 Cal.4th 172, 176 (*Gaines*).)

[5]  The remainder of this paragraph summarizes pertinent portions of the investigator's report.

force if [Carter] didn't cooperate," Carter asserted that "probably" did "happen." Carter told the investigator that he was "not willing to testify in this case."

On June 24, 2019, the trial court held a hearing on Smith's new trial motion and on whether to strike the firearm enhancement. The court denied the new trial motion on the ground that "it would not be probable that the outcome would [have been] different" had Carter testified at trial.

Additionally, upon "consider[ing] all of the facts and circumstances of the incident," the trial court declined to strike the 10-year firearm enhancement imposed by section 12022.53, subdivision (b). The court reasoned that although it previously found in connection with the robbery conviction that "[t]here were [a] number of factors in mitigation," there were no mitigating factors "with respect to the use of the gun." Furthermore, in response to defense counsel's argument that Smith committed the robbery to "get money for" his family, the court stated, "[T]here are other ways [to] do that that don't involve violence." The court also remarked that the robbery victim "was obviously unsettled at the minimum, if not terrorized by this act."

Upon denying the new trial motion and declining to strike the firearm enhancement, the trial court reinstated the original judgment against Smith.

Smith timely appealed.

## FACTUAL BACKGROUND

### 1. The People's theory of the case

On the evening of June 12, 2015, Jorge Gonzalez was working at a mini-market that he and his wife owned. Smith entered the mini-market, pointed a gun at Gonzalez, and

6

demanded money from him.  Gonzalez recognized Smith because he had previously come into his store to make purchases.  Smith threatened to shoot Gonzalez, and Gonzalez thereafter gave Smith money from the cash register.  Gonzalez later reported the crime to the police.

The next day, Gonzalez approached police officers and told them that Smith, who was walking down the street nearby, had robbed him.  Smith ran away after one of the officers approached him.  As the police pursued Smith on foot, he dropped a loaded gun; Gonzalez later identified this weapon as the gun that Smith used to rob him.  At the conclusion of the pursuit, the police apprehended Smith.

## 2.    Smith's interview with Detective Harden

At trial, Detective Harden testified that he interviewed Smith at a police station on the evening of June 13, 2015.  Harden authenticated a redacted audio recording of the interview that was admitted into evidence.  Although the audio recording itself is not in the record before us, a transcript thereof is in the appellate record.[6]

During the interview, Harden stated that Smith's girlfriend attempted to conceal from the police the gun that Smith had dropped.[7]  Harden accused Smith of committing a robbery and

---

[6] This transcript was also admitted into evidence.  Our description of the contents of the interview is based on the transcript.

[7] The People's counsel referred to this person as Smith's girlfriend, whereas defense counsel called her Smith's fiancée, and Smith's appellate counsel at times designates her as Smith's

7

stated that Smith's girlfriend "knows what [Smith] did with that gun." Although Harden initially intimated that Smith's girlfriend was "go[ing] to jail" because "she picked up [Smith's] gun to help [him] out," Harden shortly thereafter stated that "she's going to leave tonight . . . [and] not going to get booked tonight . . . because she told me what's up[,] . . . [s]he told me the truth." Harden further suggested that a video recording showed that Smith was at the scene of the robbery.

Later during the interview, Harden stated he understood that Smith was "providing for [his] family," "trying to keep the lights on, [and] trying to keep [his] baby fed"; Harden told Smith that he had an "opportunity . . . to tell [Harden Smith's] side of the story, from [Smith's] perspective." Smith stated that he "wasn't trying to hurt nobody." Harden replied in pertinent part, "I believe you, okay? . . . Write down what happened, okay?[8] . . . Think about your kids, think about what you'll be able to tell them, okay, that you told the truth, and you tell the truth always."

The transcript indicates that shortly thereafter, Harden stated: "[Y]ou told [the victim] to open the register and give [you] the money, yes? . . . You said it over and over again, give me the money, give me the money." Smith responded: "I [unintelligible]

_____

wife. Her precise relationship to Smith has no bearing on the instant appeal.

    **8** Harden testified that during the interview, he provided Smith with a form on which he could "write his side of the story," and that Smith filled out the form. Although that form was admitted into evidence, it is not in the record before us. In any event, there is no dispute that Smith confessed to the robbery during his interview with Harden.

only said it once, and he just walked over." Harden next said: "And then you raised the gun up over your head as if you were going to hit him with it, but you didn't," and Smith replied: "No, I didn't." Smith then claimed the victim handed him only $40, whereas Harden replied that the victim "thinks it was $60."

At trial, Harden admitted "[t]here was no video" of the robbery, and that he had told Smith such a video existed "as a ruse." Harden also admitted that Smith's girlfriend never told him that she knew what Smith "did with that gun." Additionally, Harden testified that although he "alluded to the fact" that Smith's girlfriend "might be going home," he did not promise to release Smith's girlfriend if Smith told him the truth. Harden also testified that he did not "impl[y]" that Smith's girlfriend "was leaving jail."

## DISCUSSION

Smith argues he is entitled to a new trial because if he had been allowed to present evidence that Harden employed coercive interrogation techniques against Carter, there is a reasonable probability that the jury would not have convicted Smith of second degree robbery. In the alternative, he contends that the trial court erred in declining to strike the firearm enhancement. For the reasons discussed below, we disagree with both contentions.

### A. Smith Fails to Establish that Carter's Allegations Entitled Him to a New Trial

"To obtain relief, . . . a defendant who has established that the trial court erred in denying *Pitchess* discovery must also demonstrate a reasonable probability of a different outcome had the evidence been disclosed." (*Gaines*, *supra*, 46 Cal.4th at

9

p. 182.)  "The reasonable-probability standard of prejudice we have applied in *Pitchess* cases is the same standard we have applied generally to claims that the prosecution improperly withheld exculpatory evidence in violation of a defendant's right to due process."  (*Id.* at p. 183.)

Under this standard of prejudice, " '[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. . . . [¶] . . . *[I]t is not a sufficiency of evidence test.*  A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict.' "  (*People v. Harrison* (2017) 16 Cal.App.5th 704, 710.)  Put differently, " 'the conviction must be reversed[ ] *only* if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.' "  (See *Gaines*, *supra*, 46 Cal.4th at p. 185.)

Smith contends Carter's allegations against Detective Harden "corroborated the defense that Mr. Smith falsely confessed."  Smith seems to advance two separate, but related, theories of prejudice—i.e., the introduction of evidence that Harden previously used coercive interrogation tactics would have: (1) "giv[en] the jury a factual basis to reject the Detective's testimony that *he never implied* to Mr. Smith that he would not release his girlfriend unless Mr. Smith confessed"; and (2) "show[ed] that Detective Harden *knew* exactly what he was communicating [to Smith]:  that Mr. Smith needed to confess or else his family would be harmed" because Smith's girlfriend would not be released from custody.  (Italics added.)  Neither theory establishes a reasonable probability that the new evidence

10

would have persuaded one or more jurors that Smith's confession was coerced.

As we noted in the Factual and Procedural Background, an audio recording of Harden's interview with Smith was admitted into evidence, along with a transcript of that interview. Smith does not explain why the jury could not have relied solely on the recording and the transcript to assess whether Harden impliedly threatened to keep Smith's girlfriend in custody if Smith refused to confess to the robbery. Although the recording and the transcript contained redactions, Smith does not claim that these omissions prevented the jury from determining whether Smith's confession was coerced. Indeed, Smith apparently claims that at trial, Harden falsely claimed that *the recording* did not show he had "suggested" that if Smith "confessed to the robbery, police would release his [girlfriend] . . . ."

Thus, Smith fails to demonstrate that if Carter's allegations against Harden had been presented at trial, there is a reasonable probability that at least one juror would have found that Smith's confession was coerced. (See *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1139 ["We must presume all intendments and presumptions in favor of the judgment, and ' " 'on matters as to which the record is silent, . . . error must be affirmatively shown.' " ' "].)

Insofar as Smith believes the new evidence establishes that Detective Harden *believed* he was impliedly threatening Smith during the interview, such evidence would not have been relevant to the jury's analysis of Smith's confession. In determining whether Smith's confession was coerced, the jury was required to ascertain the extent to which Harden's conduct prompted Smith to make the confession, and not whether the detective was

11

subjectively aware that his conduct would have such an effect. (See *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1133 ["[T]he voluntariness inquiry is, of course, concerned with *defendant's* subjective state of mind at the time of the questioning, not that of [the] [investigating d]etective . . . ."]; *People v. Xiong* (2020) 54 Cal.App.5th 1046, 1070–1071 [noting that "evidence of defendant's state of mind . . . was relevant to [his] false confession defense," and that "the issue of voluntariness" of the defendant's confession called for an assessment of " 'the circumstances that prompted his confession' "].)

Smith further contends that "[t]he only other evidence of guilt [(i.e., besides his confession)] was [Gonzalez's] eyewitness testimony," which was "unreliable" because "(1) it was a cross-racial identification; (2) the victim only saw the perpetrator for a brief period of time; (3) the victim was under extreme stress during the short time in which he observed the perpetrator; (4) the victim observed the perpetrator while he held a gun; and (5) one day passed before the victim identified" Smith.[9]  Smith also suggests his confession was unreliable because it contained "many inaccuracies," including his statement to Harden that he

---

[9] We note that during the proceedings below, Smith did not argue that the eyewitness testimony was reason alone to grant a new trial, nor could he have done so.  There were only two issues on remand:  Whether the failure to disclose information leading to the discovery of Carter's allegations against Harden required a new trial and whether the court would exercise its discretion to strike the firearm enhancement. (*Smith I*, *supra*, B281860.)  Smith argued below that the trial court's *Pitchess* error was especially prejudicial because of the unreliability of the victim's eyewitness identification of Smith as the man who robbed him at gunpoint.

"did not raise the gun as if he was going to hit Gonzalez"; Smith asserted that Gonzalez " 'walked over' " after Smith demanded money from him, whereas Gonzalez claimed that he remained behind the counter throughout the robbery; and the fact that Smith "said he took $40, but Gonzalez said that he took $60." The Attorney General counters that Gonzalez's identification of Smith "was highly credible" because "Gonzalez recognized [Smith] as someone who came into his store frequently to buy soda and cigarettes"; "Gonzalez's identification of [Smith] also occurred soon after the robbery, the next day, when Gonzalez saw [Smith] walking near the store"; "Gonzalez immediately notified nearby police officers that [Smith] was the man who robbed him the day before"; Smith "fled when approached by police officers the following day and had to be pursued on foot"; and Smith "had a loaded handgun on his person which matched the description given by Gonzalez, and which Gonzalez later identified as the gun used in the robbery."

Because Smith's appellate claim hinges on his erroneous premise that there is a reasonable probability that Carter's allegations against Harden would have persuaded the jury that Smith's confession was coerced, we need not reach the parties' other arguments concerning the reliability of Gonzalez's eyewitness identification or the purported inaccuracies in Smith's confession about the amount Smith robbed from the victim, whether Gonzalez " 'walked over' " after Smith demanded the money, and whether Smith raised his firearm in a threatening fashion.

In sum, Smith's claim of error fails because he has not shown that the exclusion of the new evidence " 'undermines

13

confidence in the outcome of the trial.' " (See *Gaines*, *supra*, 46 Cal.4th at p. 185.)

**B.     The Trial Court Did Not Abuse Its Discretion in Declining to Strike the Firearm Enhancement**

"Senate Bill No. 620 (2017–2018 Reg. Sess.), which added section 12022.53, subdivision (h), gave the trial court discretion 'in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section.' [Citation.]  [¶]  ' "[A] court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is" reviewable for abuse of discretion.' [Citation.]  'In reviewing for abuse of discretion, . . . . " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]' " ' " (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*).)  Under this standard, " ' " '[a]n appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Ibid.*)

When determining whether to strike or dismiss an enhancement, the trial court must consider "the factors listed in California Rules of Court, rule 4.410 (listing general objectives in sentencing), as well as circumstances in aggravation and mitigation under California Rules of Court, rules 4.421 and 4.423." (See *Pearson*, *supra*, 38 Cal.App.5th at p. 117.)  " '[U]nless the record affirmatively reflects otherwise,' the trial court is deemed to have considered the factors enumerated in the California Rules of Court." (*Ibid.*, quoting Cal. Rules of Court, rule 4.409.)  One factor alone may be dispositive under the abuse

14

of discretion standard. (Cf. *People v. Lamb* (1988) 206 Cal.App.3d 397, 401 (*Lamb*) [regarding imposition of the upper term].)

Our standard of review is dispositive. On the record before us, we cannot conclude that the trial court's refusal to strike the firearm was arbitrary or irrational.

Here, the jury not only convicted Smith of robbery with use of a firearm, but also of carrying an unregistered and loaded firearm the day after the robbery. (See *Smith I*, *supra*, B281860.) Thus, Smith's use of a firearm in the robbery was not an isolated lapse of judgment. Smith, moreover, does not contest the trial court's finding that during the robbery, Smith's brandishing of a firearm unsettled, if not terrorized, the victim. Under these circumstances, we cannot conclude that the trial judge acted irrationally or arbitrarily in not striking the firearm enhancement.

Smith counters that the trial court abused its discretion in declining to strike the 10-year firearm enhancement provided under section 12022.53, subdivision (b) because at Smith's sentencing hearing, the lower court "expressly found that there were no aggravating facts to the crime, and that there were a number of mitigating facts." This ignores the trial court's express finding in considering whether to strike the firearm that there were no mitigating factors "with respect to the use of the gun."

Smith also argues the trial court should have stricken the enhancement because Smith was 19 years old at the time of the robbery and "it is now widely-accepted that persons under the age of 25 years have underdeveloped brains which makes [*sic*] them far less culpable for their conduct than adults." Smith claims that his "age alone warranted the striking of the enhancement." This argument ignores the applicable standard of

15

review.  Although another trial court might have given more weight to Smith's age in deciding whether to strike the enhancement, we may set aside a contrary ruling only if the " ' " 'decision is so irrational or arbitrary that *no reasonable person could agree with it.*' " ' "  (See *Pearson*, *supra*, 38 Cal.App.5th at p. 116, italics added.)  As noted above, the record does not support the conclusion that, under the deferential standard of review applicable to Smith's appellate claim, his relative youth compels striking the firearm enhancement.

Smith contends the trial court's ruling was an abuse of discretion because it "violated the general sentencing objectives set forth in [California] Rules of Court, [r]ule 4.410[(a)]."  We reject this argument because it relies on evidence that is not in the record and for which Smith did not seek judicial notice (e.g., a study supposedly demonstrating "there is no relationship between length of sentence and deterrence").[10]  (See *People v. Endsley* (2016) 248 Cal.App.4th 110, 123 ["[O]ur review on appeal

---

[10] This argument also relies on the trial court's finding at the sentencing hearing that Smith did not pose a danger to society.  Nonetheless, the trial court reasonably could have found that Smith's *use of a firearm* posed a danger to society because Smith used a firearm during the robbery, he possessed an unregistered loaded firearm the following day, and his brandishing of a firearm had a profound effect on Gonzalez.  Furthermore, although Smith correctly points out that the People did not seek restitution on Gonzalez's behalf, we affirm the trial court's imposition of the 10-year enhancement because it was reasonably supported by other relevant factors.  (Cf. *Lamb*, *supra*, 206 Cal.App.3d at p. 401 ["One factor alone may warrant imposition of the upper term [under the abuse of discretion standard]."].)

16

is limited to consideration of the matters contained in the record before us."].)

We disregard the following arguments Smith raises for the first time in his reply: (1) his status as a father of a young child is a mitigating factor; (2) he had never been to prison before; and (3) "[h]e would have credit for time served if [we] granted him relief." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 642 ["It is improper to raise new contentions in the reply brief."].) Even considering these arguments on their merits, they do not demonstrate that the trial court's refusal to strike the firearm was irrational or arbitrary given his terrorizing use of a firearm during the robbery and his carrying an unregistered loaded firearm on the very next day.

Lastly, while Smith apparently claims we should order his release from prison to protect him from "COVID-19 infested prisons in California," he concedes that the pandemic did not arise until after the trial court decided not to strike the enhancement. Yet, Smith fails to explain how the trial court could have acted irrationally or arbitrarily by failing to consider a circumstance that did not exist at the time it refused to strike Smith's firearm enhancement.

For these reasons, we conclude that Smith failed to establish that the trial court abused its discretion in declining to strike the 10-year firearm enhancement.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


BENDIX, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.